UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. ____-Civ-_____

| | |
|---|---|
| MANDY MILLER, on Behalf of Herself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>vs.<br><br>LIVINGSOCIAL, INC., Individually, and DOES 1 through 100, Inclusive,<br><br>     Defendants. | CLASS ACTION<br><br><br><br><br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR:

(1) VIOLATIONS OF THE CREDIT CARD ACCOUNTABILITY RESPONSIBILITY AND DISCLOSURE ACT AND THE ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. §1693 *ET SEQ.*;

(2) VIOLATION OF THE DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §501.201 *ET SEQ.*; AND

(3) UNJUST ENRICHMENT

Plaintiff Mandy Miller ("Plaintiff"), by and through her undersigned counsel, brings this action on behalf of herself and on behalf of a Class of all others similarly-situated, against Defendant LivingSocial, Inc. ("LivingSocial") for compensatory, statutory and punitive damages and equitable, injunctive, and declaratory relief. Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations which specifically pertain to Plaintiff herself (which are alleged upon personal knowledge):

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §1332 and the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2). The matter in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and some members of the class are citizens of states other than the states in which LivingSocial is incorporated and has its principal place of business. In addition, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

2. This Court has personal jurisdiction over LivingSocial because it has conducted business in Florida, it has specifically marketed, sold and issued LivingSocial vouchers in Florida, it has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

3. Venue is proper in this District pursuant to 28 U.S.C. §§1391(a) and (b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## NATURE OF THE ACTION

4. Plaintiff brings this action on behalf of herself and other similarly-situated consumers nationwide who purchased vouchers for products and services from LivingSocial. The LivingSocial vouchers are issued and sold with expiration dates that are deceptive and illegal under both federal and state laws.

5. LivingSocial is a web-based company that purports to offer discounted deals on a wide variety of products and services, including restaurants and bars, salons and spas, clothing and other retail items, and dance classes and other instructional lessons, among other things.

6. LivingSocial's business model is based on offering discounts to consumers *en masse* by directly partnering with retail businesses that provide the products or services. LivingSocial promises to increase the sales volume of its retail partners by sending out "Daily Deal" e-mails to its massive subscription base (comprised of millions of consumers nationwide), highlighting and promoting the products and services of its retail partners.

7. Once consumers agree to a purchase, the "Deal" is triggered, and LivingSocial charges each consumer the advertised purchase amount. LivingSocial then sends a confirmatory e-mail to each purchasing consumer with a link to its website for downloading and printing the LivingSocial voucher, which then may be redeemed with the retail business offering the product or service for a limited period of time.

8. LivingSocial partners with hundreds, if not thousands, of retail businesses around the country. LivingSocial and its retailer partners share in revenues from the sale of LivingSocial vouchers.

9. The problem with LivingSocial's business model is that LivingSocial and its retail partners, sell and issue LivingSocial vouchers with relatively short expiration dates, knowing that many consumers will not use the vouchers prior to the expiration date. However, the Credit Card Accountability Responsibility and Disclosure Act ("CARD Act") and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693 *et seq.*, specifically prohibit the sale and issuance of gift certificates, such as LivingSocial vouchers, with expiration dates. Similarly, Florida's gift certificate law, Fla. Stat. §501.95, prohibits the sale and issuance of gift certificates with expiration dates.

10. LivingSocial's systematic placement of expiration dates on its vouchers is deceptive and harmful to consumers. LivingSocial effectively creates a sense of urgency among consumers to quickly purchase LivingSocial vouchers by offering "Daily Deals" for a short amount of time, usually a 24-hour period. Consumers therefore feel pressured and are rushed into buying the vouchers and unwittingly become subject to the onerous sales conditions imposed by LivingSocial, including illegal expiration terms, which are relatively short, often just a few months.

11. LivingSocial and its retail partners bank on the fact that consumers often will not manage to redeem LivingSocial vouchers before the limited expiration period – therefore, many consumers are or will be left with nothing, despite already having paid for the particular service or product. Accordingly, LivingSocial and its retail partners reap, or will so in the future, a substantial windfall from the sale of vouchers that are not redeemed before expiration, which is precisely the type of harmful business conduct that both Congress and the Florida State Legislature intended to prohibit.

12. Plaintiff, on behalf of herself and the Class, therefore brings this class action against LivingSocial and Does 1 through 100, inclusive (collectively "Defendants") for equitable (injunctive and/or declaratory) relief, violations of the CARD Act and the EFTA, 15 U.S.C. §1693 *et seq.*; Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* (the "Act"); Florida's Misleading Advertising Law, Fla. Stat. §817.41 *et seq.*; and unjust enrichment. Plaintiff seeks damages and equitable relief on behalf of herself and the Class, which relief includes, but is not limited to, full refunds for Plaintiff and Class members, compensatory and punitive damages, an order enjoining LivingSocial from selling and issuing LivingSocial vouchers with expiration dates and other onerous terms, costs and expenses, as well as Plaintiff's reasonable attorneys' fees and expert fees, and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff and the Class.

**PARTIES**

13. At all times relevant to this matter, Plaintiff, Mandy Miller, resided and continues to reside in Broward County, Florida. During the relevant time period, Mrs. Miller received offers for discounted products and services from LivingSocial and purchased LivingSocial vouchers based on representations and claims made by LivingSocial. The LivingSocial vouchers purchased by Mrs. Miller were subject to illegal expiration periods.

14. Defendant, LivingSocial, Inc., is a privately-held company incorporated under the laws of the state of Delaware. LivingSocial's corporate headquarters is located in Washington, D.C. LivingSocial does business in the state of Florida. LivingSocial markets, sells and issues

its vouchers to millions of consumers throughout the United States, including hundreds of thousands of consumers in Florida and Broward County.

15. The true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, are presently unknown to Plaintiff who therefore sues these Defendants by fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when they have been ascertained. Each of the Doe Defendants is responsible in some manner for the conduct alleged herein.

## SUBSTANTIVE ALLEGATIONS

### LivingSocial's Scheme to Sell and Issue Vouchers with Illegal Expiration Dates

16. LivingSocial is a "social promotions" website that promises consumers discounted deals on various products and services. To take advantage of the deals offered by LivingSocial, consumers must sign-up and provide their e-mail address and other information to LivingSocial.

17. LivingSocial sends subscribers in each of the cities it operates a "Daily Deal" e-mail, promoting the particular products or services of the retail businesses with which it has partnered.

18. To arouse consumer interest and create the urgency to buy LivingSocial vouchers, LivingSocial offers the "Daily Deal" for a limited amount of time, usually a 24-hour period. This creates a "shopping frenzy" among consumers who feel pressured to purchase LivingSocial vouchers as quickly as possible. Consumers purchase LivingSocial vouchers directly through LivingSocial's website, using their credit or debit cards.

19. LivingSocial also uses electronic social media, such as Facebook and Twitter, to promote and stoke demand for its "Daily Deals," creating additional pressure among consumers to buy LivingSocial vouchers before time runs out.

20. LivingSocial subsequently sends a confirmatory e-mail to purchasers with a link to its website, through which purchasers may download and print their LivingSocial vouchers. LivingSocial vouchers thereafter may be directly redeemed with the retail businesses offering the products and services.

21. LivingSocial imposes illegal expiration dates on each LivingSocial voucher it sells and issues, to the detriment of consumers. The expiration periods on LivingSocial vouchers frequently range just a few months from the date of purchase. Ironically, LivingSocial knows that after it has created frenzy among consumers to purchase its vouchers as quickly as possible, many consumers ultimately will be unable to redeem the vouchers before the expiration period.

22. Accordingly, consumers often cannot take advantage of and use the product or service for which they paid before the expiration period imposed by LivingSocial – leaving a substantial windfall for LivingSocial and its retail partners.

**LivingSocial's Retail Business Partners Agree to Sell Vouchers
with Illegal Expiration Dates**

23. LivingSocial focuses on two markets – the consumers who wish to obtain the advertised products or services by purchasing LivingSocial vouchers, and the retail businesses who partner with LivingSocial to promote their products and services. These retail businesses are willing to partner with LivingSocial and offer their products and services at a discount because LivingSocial promises to promote their products and services to its huge subscription base. In fact, LivingSocial promises its retail partners that its "Daily Deal" promotion will bring

them new customers, and that LivingSocial will send them "a huge check within 15 days of [their] promotion."

24. LivingSocial's business model, particularly its ability to establish partnerships with retail businesses nationwide depends in large part on its systematic use of illegal expiration dates. LivingSocial knows that at least some, and possibly all, of its retail partners would not be willing to offer their products and services at discount to consumers through the sale of LivingSocial vouchers, without an agreement to limit the time period for which consumers can redeem the vouchers. Accordingly, LivingSocial and its retail partners continue to flaunt the law by imposing illegal expiration dates on the LivingSocial vouchers sold to consumers.

25. LivingSocial attempts to circumvent federal and state voucher laws by inserting a disclaimer on LivingSocial vouchers, through which LivingSocial claims that "[i]f the state or province where the merchant is located prohibits earlier termination, then the amount you paid for the voucher will expire five (5) years from the date the voucher is issued. The prepaid portion of the voucher will not expire in states and provinces where it is prohibited by law." However, this disclaimer does not comport with Florida law, which prohibits expiration dates on vouchers, and does not provide for the "exception" invented by LivingSocial to circumvent the law.

26. Further, Federal law likewise does not provide such an exception to its prohibition on expiration dates. While Federal law does allow for expiration dates that are not earlier than 5 years after the date on which the certificate is issued, LivingSocial's vouchers expire in far less than 5 years, and usually expire in just a few months. Moreover, the disclaimer is buried at the bottom of LivingSocial vouchers in miniscule font that is easily overlooked by consumers.

27. Importantly, the disclaimer is found only on the LivingSocial voucher itself, which must be downloaded and printed by the consumer. Thus, consumers who do not download and print their LivingSocial vouchers will never have access to or knowledge of the disclaimer.

28. Finally, the disclaimer does not excuse Defendants' placement of illegal expiration dates on LivingSocial vouchers. As set forth below, Defendants' use of expiration dates constitutes *per se* violations of federal and state laws, for which there are no applicable exceptions.

### Plaintiff Miller's Purchase of LivingSocial Vouchers with Illegal Expiration Dates

31. Mrs. Miller purchased the following "voucher" from LivingSocial, which expired before she was able to use it:

| Purchase Date | Description | Purchase Price | Expiration Date |
|---|---|---|---|
| 8/12/11 | Voucher for Three Semi-Private CrossFit Classes from CrossFit ATP | $19 | 2/12/11 |

32. The CrossFit voucher purports to have a "savings clause," which provides that "[d]epending on your state's law, **the amount you paid** for the voucher may be valid for five (5) years after the date you purchased your deal. Expiration does not apply to the **prepaid portion** of the voucher in states where it is prohibited by law." (Emphasis added). This does not save the vouchers, or LivingSocial, from state or federal law, as the full value of the voucher still expired on February 12, 2011.

33. Mrs. Miller purchased the following "vouchers" from LivingSocial, all of which she has yet to use, and will expire in 2011 (the "Unused Vouchers"):

| Purchase Date | Description | Purchase Price | Expiration Date |
|---|---|---|---|
| 11/9/10 | $50 to Spend on Wine Tasting at Seventh Street Wine Company | $25 | 5/9/2011 |
| 2/22/11 | $40 to Spend on Food and Drink at Asia Bay Sushi & Thai | $20 | 6/22/2011 |
| 1/27/11 | Voucher for Four 60-Minute Indoor Rock Climbing Sessions at T-3 Health & Fitness | $20 | 7/27/11 |

34. The Unused Vouchers purport to have a "savings clause," which provides that "[i]f the state or province where the merchant is located prohibits earlier termination, then **the amount you paid** for the voucher will expire five (5) years from the date the voucher is issued. The **prepaid portion** of the voucher will not expire in states and provinces where it is prohibited by law." (Emphasis added). This does not save the Unused Vouchers, or LivingSocial, from state or federal law, as the full value of the vouchers still expire in 2011.

35. Mrs. Miller also purchased from LivingSocial the following voucher, which she was forced to use because of their fast approaching expiration dates:

| Purchase Date | Description | Purchase Price | Expiration Date |
|---|---|---|---|
| 10/11/10 | $60 to Spend on Food and Drink at da Campo Osteria | $30 | 4/11/2011 |
| 2/28/11 | $40 to Spend on Food and Drink at The Jib Room | $20 | 6/28/2011 |
| 8/13/10 | $100 to Spend on Food and Drink at Café Vico Ristorante | $50 | 8/26/2011 |

| 10/13/10 | $20 to Spend on Frozen Yogurt and Ice Cream at D'Lites Emporium | $10 | 10/13/2011 |

36. Like Mrs. Miller's Unused Vouchers, the Used Vouchers also contained disclaimers which indicated that "[t]he prepaid portion of the voucher will not expire in states and provinces where prohibited by law" or that "[e]xpiration does not apply to the prepaid portion of the voucher in states where it is prohibited by law." This does not save the Used Vouchers, or LivingSocial, from state or federal law, as the full value of the vouchers still were subject to unlawful expiration dates.

37. Plaintiff brings this nationwide class action lawsuit on behalf of herself and the proposed Class members under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

38. Plaintiff seeks certification of the following **Plaintiff Class (the "Class" and "Class members")**:

All persons who purchased or acquired a LivingSocial voucher from LivingSocial with an expiration date of less than five years from the date of purchase.

Specifically excluded from the Class are Defendants, officers, directors or employees of LivingSocial and any entity in which LivingSocial has a controlling interest and any of the affiliates, legal representatives, heirs, or assigns of LivingSocial. Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

40. **Numerosity**. The Plaintiff Class comprises millions of consumers throughout Florida and the United States. The Class is so numerous that joinder of all members of the Class is impracticable.

41. **Commonality and Predominance**. Common questions of law and fact exist as to Plaintiff and all Class members which are predominant over any questions which affect only individual members of the Class. These common questions of law and fact include, without limitation:

    a. Whether LivingSocial sold and issued LivingSocial vouchers featuring and subject to expiration dates;

    b. Whether LivingSocial's imposition of expiration dates on LivingSocial vouchers violates federal and/or Florida state laws;

    c. Whether LivingSocial has engaged, and engages in, in deceptive and unfair business and trade practices related to the imposition of expiration dates on LivingSocial vouchers and other onerous terms and conditions;

    d. Whether Plaintiff and Class members are entitled to declaratory, injunctive and/or equitable relief; and

    e. Whether Plaintiff and Class members are entitled to compensatory damages, including actual and statutory damages, as well as punitive damages.

42. **Typicality**. Plaintiff's claims are typical to the claims of Class members. Plaintiff and the members of the Plaintiff Class sustained damages arising out of LivingSocial's common course of conduct in violation of law as complained of herein. The damages of each

Class member were caused directly by LivingSocial's wrongful conduct in violation of law as alleged herein.

43. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Plaintiff Class. Plaintiff is an adequate representative of the Plaintiff Class and has no interests which are adverse to the interests of absent class members. Plaintiff has retained counsel who have substantial experience and success in the prosecution of complex class action and consumer protection litigation.

44. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous actions would engender. Furthermore, the expenses and burden of individual litigants and the lack of knowledge of Class members regarding LivingSocial's activities, would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. The trial and litigation of Plaintiff's and the Class' claims will be manageable.

**Violations of the Credit Card Accountability Responsibility and Disclosure Act and Consumer Credit Protection, Electronic Fund Transfers Act, 15 U.S.C. §1693 *et seq.*, on Behalf of Plaintiff and All Class Members**

45. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

46. The CARD Act, which amends the EFTA, prohibits the sale or issuance of vouchers that feature and are subject to expiration dates.

47. LivingSocial sold and issued and/or agreed to sell and issue LivingSocial vouchers, which are "gift certificates" as defined under 15 U.S.C. §1693*l*-1(a)(2)(B), as such vouchers constitute promises that are: (a) redeemable at a single merchant or an affiliated group of merchants; (b) issued in a specified amount that may not be increased or reloaded; (c) purchased on a prepaid basis in exchange for payment; and (d) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

48. At all relevant times, LivingSocial vouchers were sold and issued to consumers through electronic fund transfer systems established, facilitated and monitored by LivingSocial.

49. LivingSocial vouchers are not exclusively issued in paper form, as LivingSocial provides an e-mail link to consumers to download and print such vouchers. Moreover, consumers may download LivingSocial vouchers to their mobile phones through an application available on LivingSocial's website.

50. LivingSocial vouchers are marketed and sold to the general public and are not issued as part of any loyalty, award, or promotional program.

51. LivingSocial violated the CARD Act and EFTA by selling and issuing and/or agreeing to sell and issue LivingSocial vouchers with expiration dates, which are plainly prohibited under §1693*l*-1(a)(2)(B) and §1693*l*-1(c)(1).

52. Pursuant to 15 U.S.C. §1693m, Plaintiff, on behalf of herself and the Class, seeks a Court order for actual and statutory damages to be determined by the Court, injunctive relief, as well as reasonable attorneys' fees and the cost of this action.

## Violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201 *et seq.*, On Behalf of Plaintiff and Class Members Who Reside in Florida

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

54.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (the "Act"). The purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

55.     Plaintiff is a "consumer" as defined by Fla. Stat. §501.203. The LivingSocial vouchers sold to Plaintiff and the Class are a "good" within the meaning of the Act. LivingSocial is engaged in trade or commerce within the meaning of the Act.

56.     Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

57.     Florida Statute §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." LivingSocial's unfair and deceptive practices are likely to mislead – and have misled – consumers acting reasonably under the circumstances, and violates Fla. Stat. §500.04 and 21 U.S.C. §343.

58.     LivingSocial has violated the Act by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical,

unscrupulous and substantially injurious to consumers. LivingSocial engaged in the unfair business practice of selling and issuing, or agreeing to sell or issue, LivingSocial vouchers with illegal and deceptive expiration dates.

59. LivingSocial has violated §501.201's prohibition against engaging in unfair and deceptive practices by, *inter alia*, selling and issuing and/or agreeing to sell and issue LivingSocial vouchers that are subject to expiration dates, which are prohibited under both federal and Florida state laws.

60. LivingSocial's ongoing sale and issuance of vouchers with expiration dates violates the federal CARD Act and EFTA, 15 U.S.C. §1693 *et seq.*, as discussed above.

61. LivingSocial's conduct also violates Florida's voucher law, Fla. Stat. §501.95, by placing illegal expiration dates on the LivingSocial vouchers and Florida's Misleading Advertising law, Fla. Stat. §817.41 *et seq.*, as discussed below.

62. Moreover, based on information and belief, LivingSocial does not provide cash refunds to consumers when the retail business offering the product or service refuses to honor the LivingSocial voucher or goes out of business.

63. LivingSocial violates, and violated, the Act by disseminating and/or agreeing to disseminate, through LivingSocial's website and other promotional channels, misleading and partial statements about LivingSocial vouchers that have a tendency to mislead the public.

64. For the reasons set forth above, LivingSocial engaged in unfair and deceptive practices in violation of Fla. Stat. §501.201 *et seq.*

65. Plaintiff and the Class have been aggrieved – and continue to be aggrieved – because they purchased the LivingSocial vouchers in reliance on the LivingSocial's deceptive

and unfair practices and ultimately received vouchers with illegal expiration periods that restrict its use.

66. LivingSocial's conduct caused, and continues to cause, substantial injury to Plaintiff and other Class members. Plaintiff has suffered injury in fact and lost money as a result of LivingSocial's conduct.

67. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of LivingSocial as more fully described herein.

68. Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of LivingSocial and for restitution and disgorgement.

69. Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

### Unjust Enrichment
### on Behalf of Plaintiff and All Class Members

70. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

71. LivingSocial has received, and continues to receive, a benefit at the expense of Plaintiff and the Class members.

72. LivingSocial knowingly and/or recklessly sold and issued, or agreed to sell and issue, LivingSocial vouchers with illegal expiration dates, as well with other deceptive terms and conditions.

73. As a direct and proximate result of LivingSocial's unlawful acts and conduct, Plaintiff and Class members were deprived of the use of their money that was unlawfully charged and collected by LivingSocial, and are therefore entitled to reimbursement of any money unjustly paid to LivingSocial in connection with the sale of LivingSocial vouchers.

## PRAYER FOR RELIEF

74. Plaintiff, individually, and on behalf of the Class, prays for judgment and relief against LivingSocial as follows:

   a. For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed classes described herein and appointing Plaintiff to serve as class representative and Plaintiff's counsel Wites & Kapetan, P.A. as Lead Counsel for the Class;

   b. For an order enjoining LivingSocial from continuing to sell and issue LivingSocial vouchers and pursue the above policies, acts and practices related to the sale and issuance of such vouchers;

   c. For an order requiring LivingSocial to fund a corrective advertising campaign in order to remedy their wrongful and illegal conduct;

   d. For an order awarding restitution of the monies LivingSocial wrongfully acquired by their wrongful and illegal conduct;

   e. For an order requiring disgorgement of monies wrongfully obtained as a result of LivingSocial's wrongful and illegal conduct;

   f. For compensatory and punitive damages, including actual and statutory damages, arising from LivingSocial's wrongful and illegal conduct;

g.    For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

h.    For pre-judgment and post-judgment interest at the legal rate; and

i.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted by:

WITES & KAPETAN, P.A.
Attorneys for Plaintiff and the Class
4400 N. Federal Highway
Lighthouse Point, FL 33064
(954) 570-8989
(954) 428-3929 (fax)

By: /s/ *Marc A. Wites*
    MARC A. WITES
    Fla. Bar No.: 24783
    mwites@wklawyers.com